**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

VANDER DAVIS,                  *

Plaintiff,                  *

v.                         *          Civil Action No. ELH-21-3164

MARYLAND PAROLE COMMISSION, *et al.*,*

Defendants.              *
                             ***

## <u>MEMORANDUM OPINION</u>

The self-represented plaintiff, Vander Davis, is an inmate incarcerated at Roxbury Correctional Institution in Hagerstown, Maryland. He filed suit against the Maryland Parole Commission ("MPC"), Parole Officers Mya Collins and David Law, and case manager Michael Nines. ECF 1.[1] In the Complaint, Davis asserts that he is deaf and, while he was incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, defendants denied him participation in his parole hearing by failing to provide accommodations, as mandated by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (2018), and the Rehabilitation Act, 29 U.S.C. §§ 701–796. *Id.* Davis seeks $500,000 in monetary damages. *Id.* at 7.

Defendants moved to dismiss or, in the alternative, for summary judgment. ECF 12. Their motion is supported by a memorandum of law (ECF 12-1) (collectively, the "Motion"), an affidavit, and an exhibit.

---

[1] As defendants note, the caption of the complaint refers to "Inst. Parole WCI Assoc. Mr. Nines." ECF 12-1 at 1 n.2 (citing ECF No. 1 at 1). Presumably, Davis intends to file suit against Michael Nines, a case manager at Western Correctional Institution, as there is no Institutional Parole Associate whose last name is Nines, nor is there a "WCI Parole Assoc." *See id.* The Clerk shall be directed to amend the docket accordingly.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Davis of his right to respond and that the failure to file a response in opposition to defendants' Motion could result in dismissal of his Complaint.  ECF 13.  Davis filed an opposition to the motion (ECF 15), with exhibits.  Defendants replied (ECF 16) and also submitted exhibits.[2]

The matter is now ripe for disposition.  Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, I shall grant the Motion.

## I.      Factual Background

### A.      Davis's Allegations

Davis alleges that while he was incarcerated at WCI on June 15, 2021, he received notice of an upcoming parole hearing scheduled for July 2021.  *See* ECF 1 at 2.[3]  He informed staff that due to his "disability [he] could not effectively communicate," and was told that the hearing would be in person, during which he would "be o.k. reading lips."  *Id.* at 2-3.

Davis was called for a parole hearing, via video, on July 15, 2021.  *Id.* at 3.  Davis told the hearing officer and defendant Nines that he was deaf and needed closed captioning.  *Id.*  Because the captioning equipment was not available, the hearing officer postponed the proceeding.  *Id.*

On August 26, 2021, Davis was again called for a parole hearing, via video.  *Id.* at 4.  Davis informed defendant Collins, the assigned hearing officer, and defendant Nines that he needed auxiliary aids, namely computer-aided transcription services, in order to communicate effectively.

---

[2] Davis filed correspondence in August 2022, claiming that correctional staff have discriminated against him since the filing of this suit.  ECF 20.  To the extent Davis alleges that he has been subject to retaliation amounting to a 42 U.S.C. § 1983 violation, he may raise his claim in a separate Complaint.

[3] All citations reflect their electronic pagination.

2

*Id.* But, plaintiff was told that the MPC does not have captioning services. *Id.* The hearing was postponed a second time. *Id.*

On September 24, 2021, Davis was called to an in-person parole hearing before defendant Law. *Id.* at 4-5. Defendant Nines was also present. *Id.* at 5. During the proceeding, Davis noticed that there were no auxiliary aids and services, and he could not understand defendant Law because he was wearing a mask, in light of the COVID-19 mask requirement. *Id.* Davis explained to Law and Nines that he thought a computer-aided transcript would be available, and Law replied by writing on a piece of paper, "I agree that we should have the TTY [teletypewriter] equipment – you should be covered by [the ADA]." *Id.* at 5-6. Consequently, the parole hearing was postponed for a third time. *Id.*

The parole hearing was eventually held on April 8, 2022, and is discussed, *infra*.

**B.     Defendants' Response**

Defendants state that Davis did not reach parole eligibility until January 19, 2022, and thus was not yet eligible for parole when his hearing was postponed in July, August, and September of 2021. ECF 12-1 at 3 (citing Md. Code, Corr. Servs., § 7-301(c)).

As WCI's ADA coordinator, WCI Assistant Warden Bradley Butler considered three options on how to accommodate Davis during his parole hearing. ECF 16-11 (Butler Aff.), ¶ 4. The first option involved the use of the Zoom platform where the hearing officer would "type anything that needs to be communicated to Davis." *Id.* The second option involved the use of "HIS Sign," a Communication Access Realtime Translation ("CART") service provider who would listen to the hearing via Zoom and relay the information in text form using StreamText. *Id.* Butler noted that the staff was unfamiliar with this method and that it would require a strong microphone. *Id.* The third option was to borrow the UbiDuo device from another correctional

facility.  *Id.*  According to Butler, this method would require the hearing officer to type anything that needed to be communicated to Davis, who would read it and respond via Zoom.  *Id.*  WCI staff was also unfamiliar with this method.  *Id.*

After the options were presented to Davis, he responded by stating that he preferred CART, or the second option.  *See* ECF 15-4, Case Manager's Note to Davis, at 22.  However, Butler subsequently determined that using Zoom, or the first option, would be best.  ECF 16-11, ¶ 5.  Thus, on March 27, 2022, Butler directed a case manager to inform Davis of his decision.  *Id.*  On March 28, 2022, Davis was so informed, and he replied by stating that "he can respond verbally on the zoom if the information is typed to him to read in the chat from MPC."  ECF 16-14 (email).

As noted, the parole hearing was held on April 8, 2022.  ECF 12-2 (Aff. of MPC Chairman David Blumberg), ¶ 3.  At that time, the hearing officer communicated with Davis through the chat function of the Zoom platform.  *Id.*

At the beginning of the parole hearing, Davis did not mention his preference for CART, nor did he object to the use of Zoom.  *See* ECF 16-3 (Hearing Transcript) at 2.  As the hearing was concluding, and after the hearing officer told Davis that he would recommend parole reconsideration again in April 2024 (*id.* at 19), the following colloquy occurred, *id.* at 21:

> [HEARING OFFICER]: (Typing) Any more questions?
>
> MR. DAVIS: Any more questions?  I just want to thank y'all for, for offering this service to me.  This is not, this is not actually, the CART, that's, well, well what I normally have and this is new right here.  What I normally have, they would hire a lady to do like a, to do the typing and you'll be talking and she'll type everything and it'll be on a, and everything will come up on a computer.  It's less work for you.
>
> [HEARING OFFICER]: (Laughs)
>
> MR. DAVIS: (Laughing) You know what I'm saying.  Anyway, this is something new and it seems to work out.  No, sir, and I thank you very much…

[HEARING OFFICER]: Good luck.

MR. DAVIS: …for everything, sir.

[HEARING OFFICER]: Okay.

MR. DAVIS: Thank you.

[HEARING OFFICER]: Okay.

MPC Chairman Blumberg approved the hearing officer's recommendation that Davis be reconsidered for parole in April 2024.   ECF 12-2, ¶ 4; *see also* ECF 16-9, Parole Recommendation/Decision.

## II.      Standards of Review

### A.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that

5

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond,*

*Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

The pleadings of a pro se litigant are construed generously, to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  But, courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).

## B.

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one

for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)),

explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom*; *Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Davis has not filed an affidavit under Rule 56(d). I am satisfied that it is appropriate to address the pending Motion as one for summary judgment as to defendant MPC, as this will facilitate resolution of the case. But, I shall construe the Motion as one for dismissal as to defendants Collins, Law, and Nines.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

The Supreme Court has clarified that, under Rule 56(a), not every factual dispute will

defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  Thus, to avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).  In other words, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d

514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  Indeed, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

Notably, the court must view the evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in his favor, "without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Of import, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436

F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted).   In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to a material fact. *Matsushita Elec.*, 475 U.S. at 585-86.  "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Harmoosh*, 848 F.3d at 238.

Because Davis is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.    Discussion

### A.

Davis alleges that defendants' failure to provide captioning equipment for use at his parole hearing violated the ADA and the Rehabilitation Act.  These statutes are generally construed to impose the same requirements due to the similarity of their language.  *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999).

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2).  The ADA contains five titles:  Title I, Employment; Title II, Public Services; Title III, Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  It prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," *id.* § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability."  *Id.* § 12132.

Title II of the ADA applies to "'anything a public entity does.'"  *Seremeth v. Bd. of County Comm'rs of Frederick County*, 673 F.3d 333, 338 (4th Cir. 2012) (citing cases) (citations omitted); *see also Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 380-81 (D. Md. 2011). Of import here,

14

Title II applies to state prisons.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory definition of 'public entity . . .'").

For purposes of Title II, a "qualified individual with a disability" is defined as an individual with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  And, it is well established that a private party may sue to enforce Title II of the ADA.  *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir. 1994); *Davis v. Southeastern Community Coll.*, 574 F.2d 1158, 1159 (4th Cir. 1978), *rev'd on other grounds*, 442 U.S. 397 (1979).

To establish a violation of Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability.  *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016); *see also Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 362 (4th Cir. 2008); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

"Discrimination" barred by Title II includes "a failure to make reasonable modifications" that are "necessary" to provide a disabled individual with "full and equal enjoyment" of the facility's services.  *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). The term "reasonable accommodations," which is derived from the employment discrimination provisions of Title I of the ADA, is essentially synonymous with the term "reasonable

modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," 42 U.S.C. § 12131(2), which is what Title II of the ADA requires a public entity to provide. *See, e.g.*, *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007) ("Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation.'"); *McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004) ("Although Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,' these terms create identical standards.").

A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. *Constantine*, 411 F.3d at 488-89. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade*, 480 F.3d 1072, 1082 (11th Cir. 2007); *see also Lamone*, 813 F.3d at 507-08 ("A modification is reasonable if it is 'reasonable on its face' or used 'ordinarily or in the run of cases' and will not cause 'undue hardship.'" (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012)); *Pashby v. Delia*, 709 F.3d 307, 323 (4th Cir. 2013).

Pursuant to regulations promulgated consistent with the ADA, a public entity must "take appropriate steps to ensure that communications" with disabled persons "are as effective as communications with others." 28 C.F.R. § 35.160(a). Furthermore, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities. . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity. 28 C.F.R. § 35.160(b)(1)")).

The Rehabilitation Act was enacted seventeen years prior to the ADA. The Rehabilitation

Act provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).

Section 504 of the Rehabilitation Act is closely related to Title II of the ADA and, to "the extent possible, [courts] construe similar provisions in the two statutes consistently."  *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002); *see Seremeth*, 673 F.3d at 336 n.1 ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'") (citation omitted); *Rogers v. Dept. of Health & Environmental Control*, 174 F.3d 431, 433-34 (4th Cir. 1999) (stating that courts may apply Rehabilitation Act precedent in interpreting the ADA, and vice versa).  Indeed, the statutes "share the same definitions of disability," *id.* at 433, and Title II of the ADA explicitly provides that "[t]he remedies, procedures, and rights" provided under § 504 of the Rehabilitation Act "shall be the remedies, procedures, and rights [that Title II of the ADA] provides to any person alleging discrimination on the basis of disability. . . ."  42 U.S.C. § 12133.[4]

Despite the general congruence of Title II of the ADA and § 504 of the Rehabilitation Act,

---

[4] In turn, the Rehabilitation Act incorporates by reference the "remedies, procedures, and rights" established by Title VI of the Civil Rights Act of 1964 (codified at 42 U.S.C. § 2000d *et seq.*), which prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance.   29 U.S.C. § 794a(a)(2).   Accordingly, courts look to Title VI precedent to resolve remedial and procedural issues arising in Rehabilitation Act and ADA Title II cases.

In general, a successful plaintiff in a suit under Title II of the ADA or § 504 of the Rehabilitation Act is entitled to a "full panoply" of legal and equitable remedies, including money damages and injunctive relief.  *Pandazides*, 13 F.3d at 830; *see generally id.* at 829-32.  However, there are some limitations as to available relief.  Punitive damages are not available.  *See Barnes*, 536 U.S. at 189.  Moreover, compensatory damages are available only upon proof of disparate treatment, rather than mere disparate impact.  *Pandazides*, 13 F.3d at 829-30 & n.9.

there are two principal differences between the statutes. First, a plaintiff must show a different "causative link between discrimination and adverse action" under the two statutes. *Rose*, 192 F.3d at 469. Under Title II, a plaintiff need only prove discrimination "by reason of" disability. 42 U.S.C. § 12132. But, a successful Rehabilitation Act claim requires a showing of discrimination "*solely* by reason of" disability. 29 U.S.C. § 794(a) (emphasis added). *See Constantine*, 411 F.3d at 498 n.17 ("[W]e have recognized that the causation standards under Title II of the ADA and § 504 of the Rehabilitation Act are 'significantly dissimilar.'") (quoting *Baird*, 192 F.3d at 469).

The second significant difference between Title II and the Rehabilitation Act is that, as noted, Title II applies to any "public entity," while § 504 of the Rehabilitation Act applies only to federal agencies or to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Thus, to show a violation of the Rehabilitation Act by a state, local, or private entity, a plaintiff must demonstrate that the "program or activity" at issue receives "Federal financial assistance."

In their Motion, defendants contend that: (1) the MPC is entitled to Eleventh Amendment immunity with regard to Davis's demand for monetary damages under the ADA; (2) Davis's claims for monetary damages under the Rehabilitation Act are subject to dismissal; (3) any claim for injunctive relief must be dismissed as moot; (4) the individual defendants are not subject to suit under the ADA and the Rehabilitation Act; (5) and the MPC is entitled to summary judgment because it has not denied Davis participation in the parole consideration process. ECF 12-1.

**B.**

As noted, Title II of the ADA prohibits discrimination by a "public entity[.]" 42 U.S.C. § 12132. The ADA defines "public entity" as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local

18

government[.]"  42 U.S.C. § 12131(1)(A)-(B).  "By its plain language, this definition does not include private individuals or private entities."  *Wright v. Carroll Cty. Bd. of Educ.*, No. ELH-11-3103, 2013 WL 4525309, at \*19 (D. Md. Aug. 16, 2013) (internal quotation marks and citations omitted); *see Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam) ("[T]he ADA . . . do[es] not provide for causes of action against defendants in their individual capacities.").

Because the ADA and the Rehabilitation Act apply solely to public entities, Davis's claims under these statutes cannot proceed against the individual defendants: Collins, Law, and Nines. *Baird*, 192 F.3d at 471 (upholding the dismissal of ADA claims against individuals because Title II recognizes a cause of action only against public entities, not private individuals); *Jennings v. Frostburg State Univ.*, ELH-21-656, 2021 WL 5989211, at \*10 (D. Md. Dec.16, 2021) (dismissing individual defendants sued under the Rehabilitation Act after determining that individual liability is prohibited); *see also Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (joining the Fifth, Eighth, and Eleventh Circuits in holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act").

Thus, Davis's claims against these individual defendants must be dismissed.

## C.

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."[5]

Sovereign immunity "protects the States, their agencies, and State officials acting in their

---

[5] In *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021) (per curiam), the Court described the Eleventh Amendment as a "rather narrow and precise provision . . . ." *Id.*

official capacities from being sued in federal court without their consent." *Murphy v. Commonwealth of Virginia*, 2022 WL 17484286, at \*1 (4th Cir. Dec. 7, 2022) (per curiam); *see Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"); *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018).

The Supreme Court has explained: "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suit for damages by citizens against their own States." *Garrett*, 531 U.S. at 363 (collecting cases); *see Pense v. Md. Dep't of Public Safety and Correctional Services*, 926 F.3d 97, 100 (4th Cir. 2019) ("The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'") (quoting *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)); *see also*, *e.g.*, *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528

U.S. 62, 72-73 (2000); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, __ U.S.__, 140 S. Ct. 903 (2020); *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012).

The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). In other words, there are exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state.

The Supreme Court has held that Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the States for conduct that violates the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006).

The Fourteenth Amendment guarantees that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To maintain a due process claim, the claimant must first establish the existence of a protected property or liberty interest. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). If a protected property or liberty interest is identified, "the question remains what process is due." *Id.*

In Maryland, the relevant statutes and regulations "do[] not create a legitimate expectation of parole release," so inmates have "no right protected by the due process clause" associated with the parole process. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *see also Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7-8 (1979) (holding that there is no constitutionally guaranteed liberty interest in parole). Rather, a liberty interest in parole arises only after the inmate is served with an Order of Parole. *Patuxent Inst. Bd. of Review v. Hancock*, 620 A.2d 917, 931 (Md. 1993).

Davis does not (and cannot) allege that an Order of Parole was issued to him. Accordingly,

he has failed to allege a liberty interest for which process was due, and has not asserted a due process violation sufficient to abrogate the MPC's immunity. *See Henderson v. Simms*, 223 F.3d 267, 275 (4th Cir. 2000) (noting that "[w]ith no liberty interest to protect, there is no violation of due process").

With regard to the Rehabilitation Act, an agency waives its Eleventh Amendment immunity if it accepts federal funds. *See* ECF 12-1 at 15 (citing *Constantine*, 411 F.3d at 490-91). As to MPC, the record reflects that the MPC does not receive federal funds. ECF 12-2 (Aff. of David Blumberg, MPC Chairman), ¶ 6 ("The Maryland Parole Commission does not receive any federal financial assistance.") As such, as to MPC, the Eleventh Amendment bars Davis's demand for monetary damages under the ADA as well as the Rehabilitation Act.

At the time Davis filed his Complaint in this case, his parole hearing had not yet taken place. After Davis became eligible for parole in January 2022, MPC and WCI staff evaluated different options on how to accommodate Davis. Plaintiff's parole hearing was then held on April 8, 2022, using the Zoom platform. To the extent that Davis seeks injunctive relief in the form of a parole hearing that utilizes his preferred transcription service, CART, he cannot prevail under the ADA or the Rehabilitation Act.

As previously stated, to establish a violation of these statutes, Davis must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability. *See Lamone*, 813 F.3d at 502-03.

Davis has established that he has a disability. But, he has not shown any discrimination because the MPC did not "fail[]to make reasonable modifications" that are "necessary" to provide

him with "full and equal enjoyment" of the needed service, namely participation in his parole hearing. *See Halpern*, 669 F.3d at 461.

The Fourth Circuit has made clear that a reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. *Constantine*, 411 F.3d at 488-89). Rather, the modification need only be "'reasonable on its face' or used 'ordinarily or in the run of cases' and will not cause 'undue hardship.'" *Lamone*, 813 F.3d at 507-08 (quoting *Halpern*, 669 F.3d at 464).

Davis's parole hearing was held using the Zoom platform. Although Davis expressed his preference for the CART system, the MPC and WCI's decision to use Zoom was reasonable, given that they were familiar with the platform, and it delivered the same result as the other options considered. The transcript from the parole hearing (ECF 16-3) reflects that Davis was able to understand the information presented during the hearing, as the hearing officer typed it onto the screen using the Zoom chat feature. Davis would have received the same information had the CART system been used. However, the use of Zoom eliminated MPC's need – and burden – of using a third-party vendor with whom the MPC and WCI were unfamiliar.

On this record, I cannot find that the MPC violated the ADA or Rehabilitation Act. Therefore, the MPC is entitled to summary judgment.

## IV.    Conclusion

For the foregoing reasons, I shall grant defendants' Motion. Davis's claims against defendants Collins, Law, and Nines shall be dismissed, and summary judgment shall be granted in favor of defendant MPC.

An Order follows.

 December 21, 2022                                    /s/
Date                                         Ellen L. Hollander
                                             United States District Judge